IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| ALFONZO WILLIAMS, | ) | CIVIL ACTION NO. 11-00564-N |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHERN HAULERS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

This action is before the undersigned on a motion (docs. 47-48) filed by the

intervenor-plaintiff, Alfonzo Williams, to quash six (6) subpoenas intended to be issued

by the defendant, Southern Haulers, LLC ("Southern Haulers") to former employers of

Williams, namely Whitehead Trucking, Inc., Johnson Brothers Logging Company,

Johnson John Lee Logging, J.R.'s Trucking, Inc., MSJ Trucking, Inc. and Wheelwright

Trucking, Inc, seeking.  In each of the challenged subpoenas, Southern Haulers seeks:

> The personnel records of Alfonzo Williams, Social Security
> No.: TI , DOB: t fl, including employment applications, resumes,
> performance reviews or evaluations, handbook acknowledgements,
> contracts, photographs, audio or video recordings, correspondence,
> payroll information and discipline information for Alfonzo Williams.

*See e.g.* Doc. 48-1.  Williams challenges the subpoenas on the grounds that:

> These subpoenas are not limited in scope or time, and seek all records
> related to Williams' pre-incident employment relationships with his

former employers. Moreover, these subpoenas seek information that is not relevant to any claim or defense of any party, not reasonably calculated to lead to the discovery of admissible evidence, overly broad, unduly burdensome, and invade the privacy rights of Williams.

Doc. 47 at 1-2.   Williams also seeks a protective order (doc. 47) in the event Southern Haulers has already issued these subpoenas and obtained any employment records from prior, current or prospective third-party employers.  Upon consideration of the motion, defendants' response (doc. 55) in opposition to Alfonzo Williams' motion, and all other pertinent portions of the record, the undersigned Magistrate Judge concludes and it is therefore **ORDERED** that Williams' motions are due to be and are hereby **GRANTED**. The undersigned specifically finds and concludes as follows:

1.      Southern Haulers first argues that the Court should strike Williams' motion for failure to certify that there has been a good faith conferencing between the parties. (Doc. 55 at 4).  Although the motion to quash does not include a good faith certification, the exhibits proffered by Southern Haulers,which consist of the emails exchanged by the parties regarding this matter (Docs. 55-1 through 55-6), belie any contention that Williams' counsel failed to make a good faith effort to resolve the matter prior to filing the motion to quash.[1]  In any event, the undersigned finds persuasive the following opinion concerning a similar contention:

> Best Lock also argues that Perry failed to comply with Local Rule 37.1 before filing her motion. Under Local Rule 37.1, with certain exceptions not relevant here, the court "may deny any discovery motion" unless counsel for the moving party files a separate statement showing that

---

[1] *See* Fed.R.Civ.P. 26(c)(1)

counsel has made a reasonable effort to reach agreement with opposing counsel on the disputed issues. The rule is an important measure for avoiding premature discovery disputes. It often tends to promote reasonable compromises between counsel without court intervention. The rule is not rigid, however. Perry has explained why she did not comply in this case: the volume of the requests, the immediate need to put the non-party targets of the subpoenas on notice that the subpoenas were being challenged, and the likely futility of a conference. The court appreciates the need to alert the targets of the subpoenas to the objections, and it is now reasonably apparent that a conference would not have produced agreement on these subpoenas. At this point there would be no point in requiring a conference and a renewed round of briefing on the subpoenas. The court therefore is exercising its discretion to excuse plaintiff's failure to comply with Local Rule 37.1.

Perry v. Best Lock Corp., 1999 WL 33494858, *1 (S.D. Ind. 1999).  This Court shall similarly excuse counsel's failure to set forth in his motion to quash his good faith attempt to resolve this matter.

2.     Southern Haulers next argues that Williams' motion is premature because "Southern Haulers did not issue the subpoenas [and] [a]s such, there is nothing for the Court to quash."  (Doc. 55 at 5).  There is, however, no evidence proffered, or contention asserted, that Southern Haulers has or will withdraw its intent to issue the subject subpoenas as clearly set forth in its letter dated April 10, 2012 (doc. 55-1 at 3). Consequently, Williams' motion to quash is not premature.

3.     Southern Haulers further argues that Williams has mischaracterized the subpoenas.  (Doc. 55 at 5-7).  The only mischaracterization alleged by Southern Haulers is that Williams included two of the six employers in the category of "pre-incident employers" when they were in fact "post-incident employers."  Southern Haulers argues that the information they seek from the two "post-incident" employers is relevant to

3

Southern Haulers' "right to offset any backpay that is awarded to Mr. Williams with his interim earnings." (*Id*. at 6), *citing* 42 U.S.C. § 2000e-5(g)(1)("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."). Southern Haulers concedes, however, that it has reviewed Williams' tax returns for the post-incident period (*Id*. at n. 1) and, consequently, has obtained evidence of Williams interim earnings. *See* Abu v. Piramco Sea-Tac Inc., 2009 WL 279036, *1 (W.D. Wash. Feb. 5, 2009)("[E]mployers will not be required to provide plaintiff's payroll records because compensation information can be obtained through less intrusive means, like tax records.").

Southern Haulers further argues that the earnings received by Williams from these two post-incident employers are relevant to Southern Haulers' defense asserting Williams' obligate to mitigate his damages. (*Id*.), *citing* Nord v. United States Steel Corp., 758 F.2d 1462, 1470 (11th Cir. 1985) (holding a plaintiff that is not reasonably diligent in seeking substantially equivalent employment is not entitled to backpay). Again, by Southern Haulers' own admission, Williams has provided his tax records for the relevant time and Southern Haulers has thus been provided ample evidence on this issue.

4.    With respect to the "pre-incident" employers, Southern Haulers argues that the information it seeks with the challenged subpoenas is relevant to Williams' burden to prove that "he was qualified for the truck driver position for which he allegedly applied." (Doc. 55 at 7), *citing* EEOC v. Joe's Stone Crabs, Inc., 296 F. 3d 1265, 1273 (11th Cir.

2002)(identifying the plaintiff's burden to show she was qualified as the second element of her prima facie case).   In this failure to hire case, Southern Haulers has asserted an affirmative defense "of after-acquired evidence." (Doc. 35 at 9,  Sixteenth Affirmative Defense).  Williams has alleged in his Complaint that defendant's Terminal Manager "denied that Defendant was hiring and refused to give Williams an employment application"  (doc. 25 at ¶ 7(e)), and that he subsequently called defendant's facility and was again "told they were not hiring" (*id*. at ¶ 7(h)).  In light of this failure to hire claim, it appears that the challenged subpoenas seek "after-acquired evidence" in support of Southern Haulers' Sixteenth Affirmative Defense.  The Court's analysis in <u>Perry</u>, *supra*, is very instructive:

> The fact that one can imagine these subpoenas leading to the discovery of admissible evidence is not alone sufficient to justify their enforcement. Under Rule 26(b)(2) of the Federal Rules of Civil Procedure, the court has the power and duty to look more closely at the discovery requests. Rule 26(b)(2) was amended in 1993 to enable courts to "keep tighter rein on the extent of discovery." Advisory Committee Notes, 1993 Amendments to Rule 26. The committee explained:

> > The information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression. * * * The revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery....

> *Id*.

> If filing what is, by all appearances to the court, a fairly routine case alleging individual employment discrimination opens up the prospect of discovery directed at all previous, current, and prospective employers, there is a serious risk that such discovery can become "an instrument for delay or oppression." The broad scope of the "after-acquired evidence" defense was

> not intended to be an invitation to pursue discovery for the sole purpose of
> finding some basis for establishing such a defense.

Perry, 1999 WL 33494858 at *2.  The mere possibility that Southern Haulers might

discovery some evidence that relates to Williams' job qualifications at the time it refused

to hire him, or even to ask him about his qualifications, is insufficient grounds to permit

the broad discovery of all personnel records from every pre-incident employer dating

back to 2002.  It is well established that "the discovery rules do not permit [a party] to go

on a fishing expedition."  E.E.O.C. v. Jack Marshall Foods, Inc., 2010 WL 55635, *3

(S.D. Ala. Jan. 4, 2010), *quoting*  Linares v. Broward County Sheriff's Office, 2009 WL

2852585 at *4 (11th Cir. 2009)(internal quotes omitted), itself *quoting* Porter v. Ray, 461

F.3d 1315, 1324 (11th Cir. 2006).

    5.    Southern Haulers also argues that "[t]o the extent Mr. Williams's records

are inconsistent with his sworn testimony, they are reasonably calculated to lead to the

discovery of admissible impeachment evidence." (Doc. 55 at 8).  In other words, because

"Williams disclosed JBL, JLL and the 'pre-incident employers' as part of his sworn

responses to Southern Haulers's First Set of Interrogatories" (*Id*), the records now sought

by Southern Haulers ***may be*** inconsistent with that sworn testimony.  Southern Haulers

has not offered any evidence that Williams' sworn testimony is in any way inconsistent

with any other evidence.  Notwithstanding, Southern Haulers argues that  Abu, *supra*,

"allow[ed] defendant to seek prior employment records because the records were relevant

to plaintiff's credibility."  (*Id*.).  However, in Abu, the Court so ruled because:

> [I]nformation from plaintiff's other employers is relevant to her credibility.
> It does not appear that defendant is conducting a fishing expedition on the

issue. Rather, ***plaintiff has been untruthful once about an important issue.*** She failed to list a recent prior employer on her employment application with defendant because she feared receiving a bad reference. The omission was made even though plaintiff signed the application certifying that the answers provided were accurate to the best of her knowledge and belief and acknowledging that intentional omissions could lead to her termination. Because plaintiff was intentionally untruthful at least once regarding an important issue, defendant is entitled to further probe her credibility.

Abu, 2009 WL 279036 at *2 (emphasis added).  No such  untruthfulness has been shown in this case.  The mere possibility that something Southern Haulers could fish out of the personnel records of every employer who employed Williams since 2002 might be admissible as impeachment evidence simply does not justify Southern Haulers' present broad sweeping attempt to discover such private information.  *See* Abu, 2009 WL 279036, *1("[P]laintiff has shown that she has a legitimate privacy interest in the contents of her employment-related files."), *citing* Maxwell v. Health Ctr. of Lake City, 2006 WL 1627020 (M.D. Fla. 2006)("Personnel files and records and [sic] are confidential in nature and ... in most circumstances, they should be protected from wide dissemination."), *quoting* Williams v. Board of County Comm'rs, 2000 WL 133433, at *1 (D. Kan. Jan. 21, 2000).

    6.    Southern Haulers further argues that the challenged subpoenas are neither overly broad or burdensome.  There may be no evidence regarding whether or not the subpoenas would prove burdensome to Williams' prior or present employers, but such an objection could be anticipated, particularly as to Southern Haulers' efforts to seek records dating back to "1/2002 – 1/2006" when Williams was employed by Al Berry Trucking. (Doc. 55-7 at 3).

Southern Haulers suggests that this Court ignore the breadth of its subpoenas simply because Williams'"makes no attempt to establish how the subpoenas are overly broad." (Doc. 55 at 8-9), *citing* Panola Land Buyers Assn. v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985). According to Southern Haulers, Panola Land stands for the proposition that "objections serving as the basis to resist discovery should be specific enough to establish how requests are overly broad." (*Id*.). The Court in Panola Land was addressing the Administration's objections to plaintiff's interrogatories and requests for production which were the predicate for the Administration's request for a protective order. The Eleventh Circuit concluded that the District Court abused its discretion by imposing the protective order which curtailed plaintiff's discovery. Such is not the case here. The Eleventh Circuit specifically held in Panola Land that:

> To be adequate, objections which serve as the basis of a motion for protective order under Fed.R.Civ.P. 26 should be "plain enough and specific enough ***so that the court can understand*** in what way the interrogatories are alleged to be objectionable." Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981). *See* Josephs v. Harris Corp., 677 F.2d 985 (3rd Cir. 1982) (*quoting* Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296-97 (E.D. Pa. 1980)) ("party resisting discovery 'must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive....' ").

762 F.2d at 1559 (emphasis added). Williams has adequately demonstrated that Southern Haulers' subpoenas are overly broad in both the attempt to seek more than Williams' post-incident earnings, which might be relevant to the back pay and mitigation of damages issues, and to seek private information concerning pre-incident employment

which, at best, has marginal relevance to Williams' qualifications as a truck driver[2] and only speculative relevance to the issue of Williams' credibility.   Williams' objections are legitimate and sufficient.  The subject subpoenas are due to be and are hereby **QUASHED**.

In view of the above and Southern Haulers' admission that it has not issued the subject subpoenas, Williams' motion for a protective order is **MOOT**.

**DONE** this   17th   day of May, 2012.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] *See* Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 591 (D. Kan. 2003)("[T]he party resisting the discovery has the burden to . . . demonstrate[e] . . .that the requested discovery . . is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure.").  The relevance of Williams' pre-incident employment records is of "marginal relevance" here because Southern Haulers has not only reviewed Williams tax returns but has presented no evidence of any insufficiency or inconsistency in Williams' disclosures concerning his ten year employment history.